AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
2/17/21
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A BLACK APPLE IPHONE AND A BLACK SAMSUNG CELL PHONE CURRENTLY LOCATED AT THE MONTGOMERY COUNTY SHERIFF'S OFFICE | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.  3:21-mj-61<br><br>Kimberly Jolson |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1) and 846 | Possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same. |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days *(give exact ending date if more than 30 days:* ___ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*TIMOTHY J WALLACE* Digitally signed by TIMOTHY J WALLACE
Date: 2021.02.16 14:39:28 -05'00'

*Applicant's signature*

SA Timothy Wallace
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____
*(specify reliable electronic means).*

Date: February 17, 2021

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK APPLE IPHONE Model A1660, FCC ID BCG-E3085A, IC 579c-E3085A AND A BLACK SAMSUNG CELLULAR TELEPHONE IMEI 355357113452812 CASE CURRENTLY LOCATED AT THE MONTGOMERY COUNTY SHERIFF'S OFFICE PROPERTY ROOM | 3:21-mj-61<br><br>Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Timothy Wallace, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I, Timothy Wallace, am a Special Agent of Homeland Security Investigations (HSI), United States Department of Homeland Security. As such, I set forth the following in support of a search warrant for one (1) Black Apple iPhone in a floral protective case (Subject Device 1); one (1) Black Samsung cellular telephone in a black protective case (Subject Device 2. Subject Devices 1 and 2 are currently within the Southern District of Ohio in the custody of HSI Cincinnati Ohio BEST Group III, Miami Valley Bulk Smuggling Task Force.

3. I am an employee of Homeland Security Investigations assigned to the Cincinnati Resident Office. I have been employed with HSI since July of 2009. I attended and graduated from the basic agent training course in Brunswick, Georgia. Prior to this, I was an Immigration Enforcement Agent with Immigration and Customs Enforcement, Enforcement and Removal Operations Fresno, California for approximately two years. I have received extensive training in the investigation of narcotics trafficking and financial crimes from Homeland Security Investigations, as well as ongoing in-service training.

4. Since February 2018, I have been assigned to the Homeland Security Investigations (HSI) Border Enforcement Security Task Force (BEST), Miami Valley Bulk Smuggling Task Force in Dayton, Ohio.

5. As a Special Agent for HSI, I am charged with the duty of enforcing among other Titles, the Controlled Substance Act, Title 21, United States Code, together with other assigned duties as imposed by federal law.

6. By virtue of my employment with HSI, I perform and have performed various tasks which include, but are not limited to:

   a. Functioning as a surveillance agent for the primary purpose of observing and movements of drug traffickers and those suspected of trafficking in drugs;

   b. Functioning as a case agent which entails the supervision of specific aspects of drug investigations; and,

   c. Tracing and tracking monies and assets gained by drug traffickers from the illegal sale of drugs.

7. This Affidavit seeks the issuance of a search warrant. There is probable cause that Manuel MARIN-Lopez and Daysi Magali HERCULES-Solito, violated Title 21 U.S.C. §

841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to do the same).  All of the details of the investigation are not included in this Affidavit, rather only information necessary to establish probable cause to search Subject Devices 1 and 2.  There is probable cause to believe that evidence of these violations is contained within the cellular telephones as further described and depicted in Attachment A.

8. The information contained in this affidavit comes from my personal knowledge and facts relayed to me by other law enforcement officers.  Unless otherwise noted, when I assert that a statement was made, I received the information from a law enforcement officer who provided the information to me, either verbally or in a written report.  The officer providing me with the information may have received the information by way of personal knowledge or from another source.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9. The property to be searched is:

Target Device 1:  Apple iPhone Model A1660, FCC ID BCG-E3085A, IC 579c-E3085A, and

Target Device 2:  Samsung cellphone IMEI 355357113452812

hereinafter the "Target Devices."  The Target Devices are currently located at the Montgomery County Sheriff's Office Property Room, 345 W 2nd Street, Dayton, OH.

10. The applied-for warrant would authorize the forensic examination of the Target Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

3

**PROBABLE CAUSE**

11. On or about November 19, 2020, HSI in conjunction with the Miami Valley Bulk Smuggling Task Force (hereinafter collectively referred to as "Agents") was conducting routine investigative operations in the Dayton, OH area. While doing so, an Ohio State Highway Patrol (OSP) Trooper observed a white Honda Odyssey bearing Ohio license plate HET5030 travelling north on Miller Lane. The OSP trooper notice that the ladders affixed to the roof of the vehicle did not properly display a flag as required by the Ohio Revised Code.

12. The OSP trooper began to follow the vehicle, one car behind. Shortly after the trooper began to follow the vehicle, the trooper observed the vehicle turn into a Days Inn on Miller Lane.

13. The trooper continued past the Days Inn to Little York Road, and turned around to return the area where he had previously been observing traffic. When the trooper had turned around in a gravel drive on Little York Road, he observed the same vehicle attempting to make a left turn from Miller Lane onto Little York Road. The trooper observed that the vehicle did not establish itself into the westbound lane of travel and drove over the double yellow lane line and partially into the eastbound lane.

14. The vehicle then turned immediately into B&D Automotive, failing to signal. The Days Inn and B&D Automotive are approximately a quarter of a mile apart, both near the intersection of Miller Lane and Little York Road.

15. As the trooper entered the B&D Automotive parking lot, the vehicle was already turning around to exit. OSP conducted a traffic stop on the vehicle for the listed violations. The driver of the vehicle provided the Trooper with a Mexican identification card displaying the name Manuel MARIN-Lopez. The passenger of the vehicle provided an El Salvadorian Passport

displaying the name Daysi Magali HERCULES-Solito. Both MARIN-Lopez and HERCULES-Solito appeared to have trouble communicating with the trooper in English.

16. OSP determined that neither the driver nor the passenger had a valid driver's license. Due to the vehicle being in a business parking lot and neither the passenger nor the driver having a valid driver's license, OSP arranged for the vehicle to be towed.

17. A database search of the Ohio Bureau of Motor Vehicles revealed that the license plate was registered to Deysi Cleaning Service in Columbus, OH.

18. Law enforcement was not able to locate additional information concerning Deysi Cleaning Services in Columbus, OH. The vehicle is registered at 1566 Oakland Park Avenue, Columbus, OH. This address appears to be a residence. A separate vehicle is registered to HERCULES-Solito at that same address.

19. During the traffic stop, MARIN-Lopez stated that he was on his way to do a roofing job. The trooper had been able to see into the back of the van and did not observe any shingles, tar paper, or nails. There was a box of tools, a case of soda, and a case of water. There were also ladders affixed to the vehicle. HERCULES-Solito also stated that she and the driver were on the way to do a roofing job. HERCULES-Solito was wearing dress shoes, black dress pants, a red sweater, and a gold necklace. HERCULES-Solito told the trooper that she did not know where the roofing job was.

20. While with MARIN-Lopez during the traffic stop, the OSP Trooper noted that he heard a cellular device ringing in HERCULES-Solito's purse. He observed that the device seemed to be receiving multiple consecutive telephone calls.

21. Shortly before the vehicle was stopped, other law enforcement personnel had observed the passenger of the vehicle appearing to look back and forth from a cellular telephone to the surrounding area.

22. During the traffic stop, an OSP K9 unit arrived at the scene. The K9 performed a free air sniff of the vehicle. The K9 did not alert/indicate to the presence of a narcotic odor.

23. While conducting an administrative search of the vehicle in preparation of it being towed, OSP Troopers discovered a wooden box containing multiple tools. Once the tools located within the box were removed and inventoried, OSP Troopers could see a gap between a false bottom of the wooden box and the side wall. Through that gap, OSP Troopers could plainly see a package wrapped in duct tape. This package was consistent with the packaging used to transport controlled substances.

24. A further search revealed nine duct tape wrapped packages and one cellophane wrapped package in a clear Ziploc bag. Agents conducted a field test on a random sample from one of the packages. The test yielded positive results for the properties and characteristics of methamphetamine. Each package weighed approximately one pound (454 grams).

25. $2,000 in U.S. currency wrapped in rubber bands was also located in the glove box of the vehicle.

26. Search incident to arrest of HERCULES-Solito's person revealed Target Device 1.

27. Target Device 2 was located in the vehicle and positioned in such a manner that led investigators to believe it was being used for navigational purposes.

28. After being advised of her rights in Spanish, HERCULES-Solito stated that MARIN-Lopez arranged for the construction job and that the toolbox containing the narcotics was already in the vehicle when MARIN-Lopez arrived at HERCULES-Solito's residence.

29. After being advised of his rights in Spanish, MARIN-Lopez stated that an unknown person had contacted him for a construction job in Dayton, OH. The same unknown person dropped off the box of tools for him to complete the job and provided $1,000 each to both MARIN-Lopez and HERCULES-Solito to buy supplies.

30. Based on training and experience, your Affiant knows that drug traffickers frequently use wireless/cellular phones to carry out their activities. It is often common for drug traffickers to have multiple phones because certain phones may be used only for certain purposes. For instance, a trafficker may use one phone just to speak to his supplier, while using a different phone to speak only to his customers. This is a counter-surveillance technique intended to make it harder for law enforcement to identify the user of the phones and his associates. In this case, two phones were located during the incident. Traffickers also commonly use prepaid cellular phones to hide their identity as the user because they generate no billing information, often require little to no identifying information to activate, can sometimes be activated using an alias, and can be easily disposed of should the trafficker believe that law enforcement has identified the phone number. In this case, multiple phones were located in connection with the vehicle in which the suspected narcotics were recovered. Target Device 1 was located in the possession of HERCULES-Solito, and Target Device 2 was located in the vehicle itself.

31. Your Affiant knows that traffickers commonly text message each other or their customers, such as meeting locations, prices, and other information needed to carry out the sale

7

of drugs (sometimes in code) and do so using cellular telephones, smartphones, and smart devices, such as tablets.  They commonly store phone numbers for their associates and customers in electronic phone book/contact lists, often under alias or code names.  Your Affiant knows that traffickers, using digital cameras located on their cellular phone or other electronic devices, will sometimes use these devices to take photographs or videos of themselves, their location, their product, their firearms or their associates, which can be electronically stored on, and transmitted from, these electronic devices.  Information can also be downloaded from the internet onto the cellular phone or smart devices, such as email, social network information (like "Facebook"), travel information like maps or directions, or photographs.  Call data, such as missed calls, received calls, or dialed calls are often electronically stored in the cellular phone.  The information electronically stored on a phone can also be evidence of who possessed or used a cellular phone at a given time, can contain direct evidence of drug trafficking acts, and can help identify drug trafficking locations or associates through GPS data.  Affiant is aware that there are tools to extract electronic data from a cellular phone so that law enforcement can review it for items of evidentiary value.  I also know that drug dealers use applications on Smart Phones or Devices such as an iPad to communicate in the manner described above with customers, suppliers and associates.  In this case, observation of the suspects before the traffic stop and the placement of Target Device 2 suggest that the suspects may have been using Target Device 2 to navigate to a particular location.  Additionally, Target Device 1 appeared to receive multiple calls during the traffic stop based on the OSP trooper's ability to hear it ringing.

   32.  I also know that drug traffickers often threaten violence or use of force against their rivals as well as customers who, for instance, may owe them money.  In doing so, drug

traffickers often use electronic devices such as cellular telephones, smartphones, tablets, and the like, to send communications referencing violence, use or possession of firearms, or threats.

33. In this modern era, individuals also use smart telephones and smart devices to log on to online banking platforms. I know that drug traffickers often use banking services to transmit money to their domestic and international suppliers.

34. Based on my knowledge, training, and experience, your Affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

35. The Target Devices are currently in the lawful possession of the Montgomery County Sheriff's Office. It came into the Montgomery County Sheriff's Office's possession after being seized incident to the arrest of Manuel MARIN-Lopez and Daysi Magali HERCULES-Solito. Therefore, while the Montgomery County Sheriff's Office might already have all necessary authority to examine the Target Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Target Devices will comply with the Fourth Amendment and other applicable laws.

36. The Target Devices are currently in storage at 345 W 2ND Street, Dayton, OH. In my training and experience, I know that the Target Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Target Devices first came into the possession of the Montgomery County Sheriff's Office.

## TECHNICAL TERMS

37. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

10

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

38. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications, I know that the Target Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience,

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

40. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

13

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

41. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

43. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Devices described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

44. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

TIMOTHY J WALLACE
Digitally signed by TIMOTHY J WALLACE
Date: 2021.02.16 14:37:14 -05'00'

Timothy Wallace
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on ~~February 1X, 20XX~~:  February 17, 2021

_____
Kimberly A. Jolson
United States Magistrate Judge

16

# ATTACHMENT A

45. The property to be searched is:

Target Device 1: Apple iPhone Model A1660, FCC ID BCG-E3085A, IC 579c-E3085A, and

Target Device 2: Samsung cellphone IMEI 355357113452812

hereinafter the "Target Devices." The Target Devices are currently located at

This warrant authorizes the forensic examination of the Target Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Target Devices described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) and 846 and involve Manuel MARIN-Lopez or Daysi Magali HERCULES-Solito since October 19, 2020, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information related to customers for drugs (including names, addresses, phone numbers, or any other identifying information);

   e. and information identifying other individuals who participate in the sale, distribution, or acquisition of drugs with Manuel MARIN-Lopez or Daysi Magali HERCULES-Solito;

   f. any information recording Manuel MARIN-Lopez's Daysi Magali HERCULES-Solito's schedule or travel from October 19, 2020 to the present;

   g. all bank records, checks, credit card bills, account information, and other financial records;

   h. information relating to the use or threated use of violence in connection with the drug trade;

      i. information relating to bulk cash, jewelry, automobile or other common proceeds of the drug trade;

2. Evidence of user attribution showing who used or owned the Target Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history, and social media accounts.